**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff*, | |
| **v.** | **Case No. 1:24-cv-00422-JRR** |
| **HILLEL TENDLER,** | |
| *Defendant*. | |

<u>**MEMORANDUM OPINION**</u>

Pending before the court are Plaintiff's Motion for Summary Judgment (ECF No. 25), Defendant's Cross-Motion for Summary Judgment (ECF No. 30), and Defendant's Motions to Seal (ECF Nos. 31, 37). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.  BACKGROUND

The United States of America (the "Government") brings the instant action under 31 U.S.C. § 3713 (the "Federal Priority Statute" or the "Statute") to collect Lehcim Holdings, Inc.'s ("Lehcim") outstanding tax liability from its vice president and secretary, Defendant Hillel Tendler. Except where noted, the following facts are undisputed.

### A.  Factual Background

Defendant and Isaac Neuberger are attorneys and principals of Neuberger, Quinn, Gielen, Rubin & Gibber ("NQGRG"), a Baltimore law firm. (ECF Nos. 25-2, Neuberger Deposition Tr. 14:20–21, 17:13–19:5; 25-4, Tendler Deposition Tr. 15:11–16:17.) In 2001, on behalf of NQGRG's client, Michel Konig, Defendant and Mr. Neuberger incorporated Lehcim, a Maryland corporation. (ECF No. 25-4, Tendler Deposition Tr. 56:20–58:20.) Since its inception, Mr. Neuberger has served as Lehcim's director, president, and treasurer, and Defendant as its vice

president and secretary.  (ECF Nos. 25-6; 25-2, Neuberger Deposition Tr. 54:12–55:14.)  During the relevant period, Lehcim's sole shareholder was Beauville Holdings Ltd. ("Beauville"), a British Virgin Islands business entity.  (ECF No. 25-6.)  Lehcim was originally created to be a partner in One Penn Center, a partnership that owned commercial real estate in Philadelphia.  (ECF No. 25-6; 25-4, Tendler Deposition Tr. 57:16–19.)

On December 18, 2002, Lehcim borrowed $207,500 from Beauville.  (ECF No. 25-10.)  On the same day, Lehcim borrowed $850,000 from Nightingale Venutres, Ltd. ("Nightingale Loan"), a BVI business entity.  (ECF No. 25-11).  Both loans were documented by promissory note; neither contained a repayment schedule.  (ECF Nos. 25-10, 25-11.)  The Nightingale loan had a maturity date of April 1, 2012; the Beauville loan did not contain a maturity date.  (ECF Nos. 25-10, 25-11.)

In 2014, the Internal Revenue Service ("IRS") began auditing Lehcim's income tax returns, and ultimately audited its returns for the tax years 2010 through 2015.  (ECF No. 25-23 at pp. 3-5.)  Throughout, and for purposes of, the audit, Lehcim was represented by Paula Junghans, Esquire, and Paul Hynes, Esquire, of Zuckerman Spaeder LLC.  (ECF No. 25-4, Tendler Deposition Tr. 137:7–138:2.)  In its tax returns under audit, Lehcim reported liabilities to Nightingale Ventures.  (ECF Nos. 25-13 at p. 21; 25-43 at p. 14; 25-44 at p. 14; 25-45 at p. 15; 25-46 at p. 16; 25-47 at p. 15.)  Lehcim claimed tax deductions each year under audit for the 18% interest accruing on the unpaid Nightingale loans.  (ECF No. 25-18.)

On March 14, 2019, the IRS issued an IRS Letter 950 and examination report to Lehcim showing proposed changes to Lehcim's federal tax returns for tax years  2010 through 2015.  (ECF No. 25-24).  These documents advised that the IRS determined the Beauville and Nightingale loans were not bona fide and, therefore, the IRS would disallow interest expenses claimed as deductions

on these loans in Lehcim's returns during the tax years in question.  (ECF No. 25-24 at p. 51.)  The IRS mailed these materials to Lehcim at NQGRG's address and to Ms. Junghans.  (ECF No. 25-24 at pp. 1–2.)  The Letter 950 requested that Lehcim respond by April 15, 2019, to advise whether it agreed or disagreed with the proposed changes set forth in the examination report.  *Id.*  Lehcim disagreed with the IRS' determination and proposed changes.  (ECF No. 30-5 ¶ 9.)

On November 20, 2019, the IRS mailed a Statutory Notice of Deficiency under 26 U.S.C. § 6212 to Lehcim at NQGRG for $1,435,245 in unpaid taxes and penalties (exclusive of interest).  (ECF No. 25-29.)  The letter advised Lehcim of its right to challenge the proposed assessments in Tax Court within 90 days and that failure to petition the Tax Court would result in assessment of the proposed deficiencies.  *Id*. at pp. 4–6.  After Lehcim did not petition the Tax Court, the IRS assessed the deficiencies on July 13, 2020.  *See* ECF Nos. 25-1 at p. 18 (citing ECF No. 25-30); 30 at p. 16.  The unpaid assessments for tax years 2010 through 2015 per Lehcim's audit totaled $1,448,580.62.  (ECF No. 25-32.)

After Lehcim received the Letter 950, Mr. Neuberger approved a plan to make a series of payments towards Lehcim's Nightingale loans.  (ECF No. 30-5 ¶¶ 8–10.)   In total, Mr. Neuberger and Defendant made ten "rounds" of transfers to Nightingale.  (ECF No. 25-4, Tendler Deposition Tr. 197:14–200:13.); *see also* ECF No. 30-5, Neuberger Affidavit ¶¶ 9–10.)  Lehcim did not disclose the Nightingale loan repayment plan to the IRS, and the IRS did not learn that Mr. Neuberger and Defendant liquidated Lehcim's assets to pay Nightingale until Lehcim's attorney, Ms. Junghans, faxed NQGRG's client ledger to the IRS more than a year after the fact, in March 2021.  (ECF No. 25-63.)

The Government alleges that, at all times during the transfers, Lehcim was insolvent.  (ECF No. 1 ¶ 23; *see* ECF No. 18, Expert Report of Jessica L. Hollobaugh.)  Defendant disputes the

Government's assertion that at the time Mr. Neuberger and Defendant made loan repayment transfers to Nightingale, Lehcim was insolvent.  (ECF No. 25-61 at pp. 5–6).  Specifically, Defendant alleges that the Government's expert relied on mistaken assumptions in calculating Lehcim's assets.  (*Id.*; ECF No. 30 at p. 17.)  Defendant additionally disputes the IRS' determination that the Nightingale loans were not bona fide, and asserts that, based on the record, the Government cannot establish Defendant exercised the requisite authority or discretion regarding the Nightingale loans repayments to expose him to liability.  (ECF No. 30 at p. 16.)

### B. Associated Case

On November 16, 2022, the Government brought a 31 U.S.C. § 3713 claim seeking to collect Lehcim's outstanding tax liability against Mr. Neuberger.  *United States v. Neuberger*, Case No. 22-CV-02977 (D. Md. 2022).  Save for the differences between Mr. Neuberger's and Defendant's roles in Lehcim discussed above, the complaint against Mr. Neuberger bears essentially the same factual allegations as the instant Complaint.  On July 10, 2023, Magistrate Judge Beth P. Gesner denied Mr. Neuberger's Motion to Dismiss.  *United States v. Neuberger*, No. CV BPG-22-2977, 2023 WL 4456795 (D. Md. July 10, 2023) ("*Neuberger* I").  Following discovery, Mr. Neuberger and the Government exchanged cross-motions for summary judgment, and Mr. Neuberger filed motions to seal the summary judgment motions and associated exhibits. *Id.* at ECF Nos. 66, 70, 67, 71, 73, 78, 81, 82, 86.  On August 27, 2024, Magistrate Judge Erin Aslan denied the parties' cross-motions for summary judgment and denied the motions to seal.[1] *United States v. Neuberger*, No. CV EA-22-2977, 2024 WL 3964886 (D. Md. Aug. 27, 2024) ("*Neuberger* II").

---

[1] On August 22, 2024, Judge Aslan held a conference with counsel for the Government and Mr. Neuberger to determine whether any personally identifiable information or other discrete portions of the filings should be redacted. Following the conference, the Government submitted a number of amended exhibits.  The corresponding original exhibits to the amended exhibits remain under seal.  *Neuberger* II, 2024 WL 3964886, at *6.

### C.  Procedural Background

On February 13, 2024, pursuant to 31 U.S.C. § 3713, the Government initiated this action seeking a judgment against Defendant for the outstanding tax liability of Lehcim in an amount of $2,091,445.  (ECF No. 1, the "Complaint.")  After a period of discovery, the Government moved for summary judgment.  (ECF No. 25.)  Defendant cross-moved for summary judgment.  (ECF No. 30).  Pursuant to the parties' Stipulated Confidentiality Order (ECF No. 21), the Government filed Interim Motions to Seal (ECF Nos. 26, 33, 35); in each motion, however, the Government noted its position that its filings should not be sealed.  Defendant also filed Motions to Seal his Cross-Motion and Reply in support thereof and all associated exhibits.  (ECF Nos. 31, 37.)  By Order of October 17, 2024, the court ordered Defendant to supplement his Motions to Seal to address Local Rule 105.11.  (ECF No. 38.)  In accordance with the Order, Defendant filed a supplemental memorandum in support of the Motions to Seal (ECF No. 39) and the Government responded in opposition (ECF No. 41).

## II.  <u>LEGAL STANDARDS</u>

### A.  Cross-Motions for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.2003) (internal quotation marks omitted); *Rullan v. Goden*, 134 F. Supp. 3d 926, 941 (D. Md. 2015) (same). "In considering

6

each motion, [the court must] 'resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion.'" *Defenders of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392–93 (4th Cir.2014) (quoting *Rossignol*, 316 F.3d at 523).

**B. Motions to Seal**

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). Specifically:

> The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny. *Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 575 (4th Cir. 2004). "The distinction between the rights of access afforded by the common law and the First Amendment is significant, because the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *In re United States for an Order Pursuant to 18 U.S.C. Section 2703,* 707 F.3d 283, 290 (4th Cir. 2013) (quoting *Va. Dep't of State Police,* 386 F.3d at 575) (internal quotation marks omitted). The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that "countervailing interests heavily outweigh the public interests in access." *Rushford,* 846 F.2d at 253. By contrast, the First Amendment secures a right of access "only to particular judicial records and documents," *Stone,* 855 F.2d at 180, and, when it applies, access may be restricted only if closure is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest," *In re Wash. Post Co.,* 807 F.2d 383, 390 (4th Cir. 1986) (quoting *Press–Enter. Co. v. Superior Court,* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (internal quotation marks omitted)).

*Id.* at 265–66. Relevant here, the Fourth Circuit has recognized that the public enjoys a "First Amendment right of access" to civil complaints. *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021).

When the First Amendment right of access applies, the court may order sealing only if "(1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of

closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest.'"  *Gonzalez v. Cuccinelli*, 985 F.3d 357, 376–77 (4th Cir. 2021) (quoting *In re Washington Post Co.*, 807 F.2d 383, 390, 392 (4th Cir. 1986)).

Consistent with this caselaw, the local rules of this court require that "[a]ny motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."  Local Rule 105.11 (D. Md. 2023).

III.    **<u>ANALYSIS</u>**

**A.  The Government's Motion for Summary Judgment**

The Federal Debt Priority statute, 31 U.S.C. § 3713, provides:

> (a)(1)A claim of the United States Government shall be paid first when—
>     (A)a person indebted to the Government is insolvent and—
>         (i)the debtor without enough property to pay all debts makes a voluntary assignment of property;
>         (ii)property of the debtor, if absent, is attached; or
>         (iii)an act of bankruptcy is committed; or
>     (B)the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.
>     (2)This subsection does not apply to a case under title 11.
> (b)A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713.  Thus, to succeed on its claim, the United States must provide evidence of "(1) a debt due the United States; (2) the debtor's insolvency; and (3) the occurrence of a triggering event—an assignment of property for benefit of creditors … or act of bankruptcy."  *United States v. Blumenfeld*, 128 B.R. 918, 928 (Bankr. E.D. Pa. 1991).  Section 3713(b) is a "wholly independent" cause of action against the debtor's representative, *United States v. Moriarty*, 8 F.3d

329, 333 (6th Cir. 1993), intended "to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid." *King v. United States*, 379 U.S. 329, 337 (1964). Because the public policy underlying the Federal Priority Statute is to secure adequate revenue for the United States, the Supreme Court instructs that the statute is to be construed liberally to achieve this purpose. *United States v. Moore*, 423 U.S. 77, 80 (1975).

### 1. *Claim of the United States Government*

The parties do not dispute as a matter of fact or law that Lehcim's outstanding tax liabilities are a claim of the United States Government. "Federal tax liabilities fall within the statutory definition of a claim." *Neuberger* I, 2023 WL 4456795, at *3; *see also S.E.C. v. Credit Bancorp, Ltd.*, 297 F.3d 127, 131 (2d Cir. 2002) ("the Federal Debt Priority statute provides the federal government, in certain circumstances, with priority over other claimants as to the payment of debts, including tax debts, owed by an insolvent debtor."); *United States v. Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996) ("There is no question that taxes owed to the United States fall within the scope of a 'claim of the Government' under the statute's broad terms."). Accordingly, there is no dispute of material fact, and the court agrees as a matter of law, that Lehcim's outstanding tax liability is a claim of the United States covered by Section 3713.

### 2. *Insolvency of Debtor*

As Judge Gesner and Judge Aslan explained in the *Neuberger* case, to establish the insolvency of a debtor the United States must prove that the debtor's "liabilities exceeded its assets." *Neuberger* I, 2023 WL 4456795, at *4 (quoting *Bramwell v. United States*, 269 U.S. 483, 487 (1926)); *accord United States v. Renda*, 709 F.3d 472, 479 n.6 (5th Cir. 2013); *Lakeshore Apts., Inc. v. United States*, 351 F.2d 349, 353 (9th Cir. 1965). Insolvency is a question of fact. *In*

*re Heilig-Meyers Co.*, 328 B.R. 471, 475 (Bankr. E.D. Va. 2005). Therefore, typically, it does not lend itself to resolution on summary judgment and is better left a matter for the factfinder to decide. *In re Worldcom, Inc.*, 357 B.R. 223, 230 (Bankr. S.D.N.Y. 2006); *In re Transit Grp., Inc.*, 332 B.R. 45, 55 (Bankr. M.D. Fla. 2005). Here, the Government nevertheless insists the question of insolvency is "so clear-cut" that it can be decided on a Rule 56 motion. ECF No. 25-1 at p. 28 (quoting *Vivos Acquisitions, LLC v. Health Care Res. Network, LLC*, No. 1:19-cv-1606 (RDA/TCB), 2022 WL 995389, at *4 (E.D. Va. Mar. 31, 2022)).

The Government contends that the material facts regarding Lehcim's insolvency are undisputed because its expert report is unrebutted. *Id*. In *Neuberger* II, upon consideration of the same expert report and arguments presented here, Judge Aslan determined "[t]he United States has oversimplified the issue," and denied the Government's Motion for Summary Judgment on the grounds that it failed to demonstrate there existed no triable issue as to Lehcim's insolvency. *Neuberger* II, 2024 WL 3964886 at *9. Here, the Government offers no reason why this court should arrive at a different conclusion; and, in any event, the court concurs with Judge Aslan's assessment and applies it here.

Defendant raises several challenges to the methodologies employed by the Government's expert, Jessica Hollobaugh, to determine solvency. Defendant argues his challenges suggest Ms. Hollobaugh's findings are not worthy of weight. (ECF No. 30 at p. 53.) In particular, Defendant first urges that Ms. Hollobaugh assumed without investigation that an asset reported by Lehcim as having more than $1.25 million in value had no fair market value. (ECF No. 30 at p. 50 (citing ECF No. 30-17, Jessica Hollobaugh Dep. Tr. 45–46).) Second, Defendant impugns the expert's assessment of the liability owed to Nightingale, a basis for the insolvency determination. *Id*. at p. 51. Finally, Defendant criticizes the fact that Ms. Hollobaugh only undertook an asset valuation

and failed to engage in market and income valuations – despite "professional standards" requiring that she engage in all three; and her report identifies all three methods, but she only pursued an asset-based valuation.  *Id*. at pp. 51–52.

The Government contends that because Defendant "offers no expert of his own to challenge" Ms. Hollobaugh's methodology, he "cannot create a genuine dispute of material fact." (ECF No. 32 at p. 33.)   But as Judge Aslan explained, this "misapprehends the thrust of" Defendant's position on this point.  *Neuberger* II, 2024 WL 3964886, at *9.  The Government bears the burden of proving the elements of its claim, including, of course, Lehcim's insolvency. 31 U.S.C. § 3713(a)(1)(A).  Judge Aslan's explanation of why the Government failed to carry its burden for purposes of summary judgment in the associated case applies here, and therefore bears repetition in full:

> The United States has elected to prove the element of insolvency with the assistance of an expert. The Court is not bound to admit proffered expert testimony nor is the factfinder bound to accept such evidence whole cloth. *E.g., Berlyn, Inc. v. Gazette Newspapers, Inc.*, 214 F. Supp. 2d 530, 536 (D. Md. 2002) ("Even if a witness is qualified to offer an expert opinion, that opinion can be excluded if it is based on inadequate facts or flawed methodology."). Indeed, it is not uncommon for courts sitting as factfinders to question the sufficiency of valuation and solvency evidence. *E.g., Sandwich Isles Commc'ns, Inc.*, 689 F. Supp. 3d at 888-889 (rejecting the United States' expert report and testimony because of concerns regarding methodology and analysis); *see also Matter of Lamar Haddox Contractor, Inc.*, 40 F.3d 118, 122 (5th Cir. 1994) (finding proffered expert testimony insufficient to establish the debtor's insolvency because substantial questions remained as to the fair value of the debtor's property); *In re Heilig-Meyers Co.*, 319 B.R. 447, 458-463 (Bankr. E.D. Va. 2004), *aff'd*, 328 B.R. 471 (Bankr. E.D. Va. 2005) (discussing competing expert reports and concluding that neither presented the correct valuation of assets). Mr. Neuberger has raised several challenges to the assumptions, methodology, and conclusions of the United States' expert, which—if successful— could call into question both the admissibility and weight of the expert's opinion. [] If these arguments prevail, then the factfinder may conclude that the United States has not carried its burden as to

11

> this element. At this juncture, the disputed issues of material fact concerning Lehcim's solvency preclude summary judgment for the United States.

*Neuberger* II, 2024 WL 3964886, at *9.   Here too, Defendant's myriad challenges—if successful—endanger the admissibility and question the weight of Ms. Hollobaugh's opinion.   For these reasons, the Government's contention that, absent an opposing expert opinion, Defendant cannot prevail is unavailing.   *Neuberger* II, 2024 WL 3964886, at *9 (citing *In re Kane & Kane*, 479 B.R. 617, 630 (Bankr. S.D. Fla. 2012)).

The Government's Motion for Summary Judgment fails.   The court now turns to Defendant's Cross-Motion.

## B.  Defendant's Cross-Motion for Summary Judgment

In his Cross-Motion for Summary Judgment, Defendant presents eight arguments.   *See* ECF No. 30 at pp. 9–13.   Besides his assertion that he is not a representative under § 3713(b), every argument Defendant makes was raised by Mr. Neuberger before Judges Gesner and Aslan. *Neuberger* I, 2023 WL 4456795; *Neuberger* II, 2024 WL 3964886.   The court addressed Defendant's argument regarding insolvency above.   In addition to the question of insolvency, Defendant argues summary judgment in his favor is warranted because the Government has not established as a matter of law that a voluntary assignment or act of bankruptcy occurred; the Government has not established as a matter of law that Defendant is a representative under § 3713(b); the Government's action is time-barred; and § 3713 does not apply here because of the Federal Tax Lien Act of 1966.   The court addresses each argument in turn.

### 1.  Voluntary Assignment

The Federal Priority Statute requires that a statutorily defined triggering event occur for the Government's claim to have priority.   As applicable in this case, Lehcim must have either (1)

made a voluntary assignment of property; or (2) committed an act of bankruptcy.  31 U.S.C. §
3713(a)(1)(A)(i), (iii).  Defendant contends the Government cannot establish either prerequisite.
(ECF No. 30 at pp. 19–20.)

Defendant asserts that "[a]s used in the Statute; 'voluntary assignment' is a legal term of
art used synonymously with an assignment for the benefit of creditors" and "[t]he contention that
Lehcim, through one of its officers, paid third-party creditors (or 'transferred some of its funds')
even at a time when *assuming arguendo* it was insolvent from a balance sheet perspective, does
not satisfy … the statutory requirement." (ECF No. 30 at pp. 20–21.)  Mr. Neuberger first made
this argument in his Motion to Dismiss.  *Neuberger* I, 2023 WL 4456795 at *5.  Judge Gesner
rejected same upon finding that the Government "cited cases in which courts, presented with facts
similar to this case, found that a voluntary assignment of property occurred and the Priority Statute
applied."  *Id*. (citing *United States v. Renda*, 709 F.3d 472, 481 (5th Cir. 2013) (finding voluntary
assignment occurred when defendant, "acting as [debtor's] representative, caused [debtor] to make
the July 2003 and December 2005 transfers and that, at the time of those transfers, [debtor] was
insolvent"); *United States v. Coyne*, 540 F. Supp. 175, 179–80 (D.D.C. 1981) (finding corporate
officer "assigned" corporation's assets to himself to avoid payment of corporate debt to the United
States); *United States v. Bridle Path Enterps., Inc.*, No. 99-11051-GAO, 2001 WL 1688911, at *4
(D. Mass. Dec. 4, 2001) (finding voluntary assignment occurred when defendants "made several
payments to themselves out of [debtor's] corporate accounts.")).  Judge Aslan adopted Judge
Gesner's finding.  *Neuberger* II, 2024 WL 3964886, at *10 ("It remains to be seen whether the
United States can prove its claim, but does not fail as a matter of law on this basis.").

On review of the record in this case, and the cited authorities, this court agrees with Judges
Gesner and Aslan that Defendant's argument here is unavailing.

13

## 2. *Act of Bankruptcy*

Defendant next contends that the Government fails to generate a genuine dispute of material fact as to whether Lehcim committed an act of bankruptcy. 31 U.S.C. § 3713(a)(1)(A)(iii). First, Defendant asserts that "the concept of an 'act of bankruptcy' was repealed by the Bankruptcy Reform Act and is now obsolete." (ECF No. 30 at p. 25.) Second, even if not obsolete, Defendant argues the Government has not adequately pled that Defendant made fraudulent transfers constituting acts of bankruptcy. Third, Defendant submits, the Government cannot obtain summary judgment on a fraudulent transfer theory because Defendant had no intent to hinder or defraud the IRS. Finally, as a matter of law, Defendant claims preferential payments do not amount to acts of bankruptcy.

Defendant's argument that the concept of "an act of bankruptcy" is obsolete is unavailing. Defendant contends that because the Bankruptcy Reform Act in 1978, Pub. L. No. 95-598, 92 Stat. 2549 (11 U.S.C. § 101 *et seq*.), repealed earlier law on which the Supreme Court relied in defining the phrase "act of bankruptcy" in the context of the Federal Priority Statute, the reference to an act of bankruptcy in Section 3713 has been nullified. (ECF No. 30 at pp. 25–26.) The cases Defendant cites pertain to the general effect of a repeal of statute, but they do not bear on Section 3713(a)(1)(A)(iii) specifically. (ECF No. 30 at 26–27 (citing cases).) Moreover, troubling to the court is that Defendant's proffered expert offers an opinion on the law – effectively opining as to the legal effect of the above-mentioned repeal. In this instance, his opinion goes beyond the proper boundaries or province of an expert witness, notwithstanding his background and qualifications to form his opinion. (ECF No. 30 at p. 27.) *See Sun Yung Lee v. Zom Clarendon*, 453 F. App'x 270, 278 (4th Cir. 2011) (affirming exclusion of an expert report because "pure questions of law [ ] are

well within the parameters reserved for the district court on a motion for summary judgment and are inappropriate subjects for expert testimony").

Congress retained the "act of bankruptcy" language in the current version of the Federal Priority Statute (31 U.S.C. § 3713), enacted only four years after passage of the Bankruptcy Reform Act of 1978. (ECF No. 32 at p. 18.) In interpreting the current version of the Statute, courts have continually recognized an act of bankruptcy as a triggering event that may support the priority of a government claim. *United States v. Golden Acres, Inc.*, 684 F. Supp. 96, 101 (D. Del. 1988) ("The term 'act of bankruptcy' still refers to the statutory definition contained in the Bankruptcy Act of 1898, former 11 U.S.C. § 21(a) (1976), even though the Bankruptcy Reform Act of 1978 generally supersedes the 1898 Act."); *Jonathan's Landing, Inc. v. Townsend*, 960 F.2d 1538, 1543 n.20 (11th Cir. 1992); *United States v. Whitney*, 654 F.2d 607, 610 (9th Cir. 1981). For precisely these reasons, Judge Aslan rejected this same argument when presented by Mr. Neuberger. This court, too, concludes this argument is insufficient to defeat the Government's claim as a matter of law.

Defendant next asserts that "*assuming arguendo* that an 'act of bankruptcy' still has any relevance, this term has historically been confined to collective proceedings" and the Government fatally failed to plead the occurrence of a collective proceeding here (ECF No. 30 at p. 40); Judge Gesner rejected Mr. Neuberger's invocation of the same argument. *Neuberger* I, 2023 WL 4456795, at *4. As Judge Gesner explained, "[a]lthough the express language of the Priority Statute clearly requires that a person indebted to the government be 'insolvent' for the statute to apply, nothing in the text of the statute requires that there be an insolvency proceeding, as defendant suggests." *Id*. (citing 31 U.S.C. § 3713(a)(1)). This court agrees. The Government

alleged Lehcim's insolvency at the time of the transfers (ECF No. 1 ¶ 23); under the plain language of the Statute, nothing more is required to allege insolvency.

Defendant next argues that the Government has not sufficiently pled the alleged act of bankruptcy—fraudulent transfers—in accordance with the heightened fraud pleading standard. (ECF No. 30 at p. 27.)  Federal Rule of Civil Procedure 9(b) requires that when "alleging fraud, a party must state with particularity the circumstances constituting fraud."  FED R. CIV. P. 9(b). Importantly, as the Government points out, Rule 9(b) motions are waived if not brought by a defendant before or in a responsive pleading.  *Neuberger* II, 2024 WL 3964886, at *11; *Miller v. Strudwick*, No. CV GLR-14-2303, 2018 WL 4679730, at *5 (D. Md. Sept. 28, 2018).  Defendant counters that the Government's theory of fraudulent transfer was raised for the first time in its Motion for Summary Judgment and was not pled in the Complaint.  (ECF No. 36 at p. 15–16.)  In *Neuberger* II, Judge Aslan determined that regardless of waiver, the Government satisfied the heightened pleading standard.

> Rule 9(b) requires that "the who, what, when, where, and how of the alleged fraud" be pleaded with particularity. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted). The purpose of this rule is to: (1) "ensure[ ] that the defendant has sufficient information to formulate a defense"; (2) "protect defendants from frivolous suits"; (3) "eliminate fraud actions in which all the facts are learned after discovery"; and (4) "protect[ ] defendants from harm to their goodwill and reputation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) *aff'd sub nom.*, 352 F.3d 908 (4th Cir. 2003). The United States' Amended Complaint fulfills the rule's requirements and purposes.

> Importantly, the Fourth Circuit has cautioned that a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id*. The posture of this case, in which discovery has been completed and summary judgment motions are fully briefed, makes

16

> plain that these two criteria have been amply satisfied and dismissal is inappropriate. *See, e.g., Mikels v. Unique Tool & Mfg. Co.*, Civil Action No. 5:06CV32, 2007 WL 4284727, at *22 (W.D.N.C. Dec. 3, 2007) (holding that the pleadings and extensive briefing on the allegations fulfilled Rule 9(b)'s requirements); *Dastranj v. Dehghan*, Civil Action No. PX-15-2436, 2017 WL 3531476, at *11 (D. Md. Aug. 17, 2017) (finding that by failing to challenge the complaint before filing an answer, the defendant conceded that plaintiff's fraud claim satisfied Rule 9(b)).

*Neuberger* II, 2024 WL 3964886, at *12.

Defendant argues that Judge Aslan arrived at the wrong result and insists the Government has not satisfied its heightened pleading burden, as the Government admits it did not know the "why" of the alleged fraud until after discovery. (ECF No. 36 at p. 16.) Additionally, Defendant asserts, even if fraudulent intent claims may be pleaded generally in fraudulent transfer claims, *In re TMST, Inc.*, 610 B.R. 807, 824 (Bankr. D.Md. 2019), the Government still has not done so, as it has not plead anything regarding Defendant's intent.

A fraudulent transfer claim "subject to the heightened Rule 9(b) standard must allege '(1) the property subject to transfer, (2) the time and, if applicable frequency of the transfer and (3) the consideration paid with respect thereto.'" *Id.* (quoting *In re Barnard L. Madoff Inv. Securities LLC*, 445 B.R. 206, 220 (Bankr. S.D.N.Y. 2011). The Government is not required specifically to allege intent even under the heightened standard. *Id.* Considering this requirement for fraudulent transfer allegations, the Government sufficiently alleged that "[f]rom March 14, 2019 until March 5, 2020, Defendant Tendler – in his capacity as vice president of Lehcim – transferred over $8,000,000 of Lehcim's funds to repay purported loans from third parties." (ECF No. 1 ¶ 21.) Rule 9(b) does not provide a basis for entry of judgment in Defendant's favor.

Defendant additionally argues that the Government cannot demonstrate fraud because Defendant did not intend to hinder, delay, or defraud the IRS, and the decision to repay the loans

was made to show the IRS that the loans were bona fide.  (ECF No. 30 at 34–36.)  It is unclear whether Defendant's intent has any relevance given that a representative's personal liability requires only knowledge or notice of the Government's claim.  *Neuberger*, 2024 WL 3964886, at *11; *see supra* Section III.B.3.  In any event, the question of Defendant's intent involves disputed issues of material fact and witness credibility evaluation – neither of which is appropriate on summary judgment.

Defendant's final argument—that a preferential payment is not an act of bankruptcy—runs afoul of relevant statutes and persuasive caselaw.  (ECF No. 30 at pp. 29–31.)  Defendant relies on a case from 1838 and the expert report of Mr. Rhodes.  As discussed above, here again, the expert report bears on a question of law.  As the Government notes, Defendant does not discuss the Bankruptcy Act of 1898, which defined "acts of bankruptcy" as including "a preferential transfer."  11 U.S.C. § 21(a)(2) (1976) (repealed).  Importantly, "[w]hile Section 3713 does not define 'act of bankruptcy,' courts have used the definition from the Bankruptcy Act of 1898 to interpret its meaning within the context of Section 3713."  *U.S. Dep't of Just. v. Sperry*, 2013 WL 1768664, at *6 (S.D. Ind. Apr. 24, 2013); *see United States v. Golden Acres, Inc.*, 684 F. Supp. 96, 101 (D. Del. 1988) (noting "[t]he term 'act of bankruptcy' still refers to the statutory definition contained in the Bankruptcy Act of 1898, former 11 U.S.C. § 21(a) (1976), even though the Bankruptcy Reform Act of 1978 generally supersedes the 1898 Act.").  *See also Neuberger* II, 2024 WL 3964886, at *11 (explaining "[c]ase law makes clear that a preferential transfer satisfies this element of a Federal Priority Act claim." (citing *United States v. Whitney*, 654 F.2d 607, 610 (9th Cir. 1981); *Lakeshore Apartments, Inc. v. United States*, 351 F.2d 349, 353 (9th Cir. 1965))).

The court is not persuaded that Defendant is entitled to judgment as a matter of law on this issue.

18

### 3. *Representative under § 3713(b)*

Upon a showing of a debt due to the United States, a debtor's insolvency, and the occurrence of a triggering event (31 U.S.C. § 3713(a)(1)(A)(i)–(iii)), subsection (b) provides that a "representative ... paying any part of a debt of the person ... before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." 31 U.S.C. § 3713(b); *see also United States v. Moriarty*, 8 F.3d 329, 333 (6th Cir. 1993) (holding that the United States' cause of action against a debtor's representative is "wholly independent" from its cause of action against the debtor and accrues "once the acts which trigger the representative's liability occur"). "The representative liability provision… gives the Priority Statute 'teeth' by making a representative who pays a non-federal debt on behalf of a corporation before paying a federal claim personally liable for the amount paid." *United States v. Renda*, 709 F.3d 472, 480 (5th Cir. 2013). In recognition of the Federal Priority Statute's "broad purpose of securing adequate revenue for the United States Treasury, courts have interpreted it liberally." *United States v. Coppola*, 85 F.3d 1015, 1020 (2d Cir. 1996.)

"Although the statutory language may suggest strict liability, courts have interpreted Section 3713(b) as requiring evidence that: (1) the representative transferred or distributed the debtor's assets before paying an antecedent claim of the United States; (2) when the debtor is insolvent; and (3) with knowledge or notice of the United States' claim." *Neuberger* II, 2024 WL 3964886, at *8 (citing *United States v. McNicol*, 829 F.3d 77, 81–82 (1st Cir. 2016)); *Renda*, 709 F.3d at 480–481; *Coppola*, 85 F.3d at 1020). Regarding the third element, the representative "must have knowledge of the debt owed ... to the United States or notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt owed before making the challenged distribution or payment." *Coppola,* 85 F.3d at 1020. Defendant insists that as a matter

19

of law, the Government cannot satisfy the conditions required to establish personal liability under 31 U.S.C. § 3713(b).  (ECF No. 30 at p. 36.)

Defendant first asserts that the relevant and key questions are not only whether he had knowledge of the debt owed, but also whether he had "complete control" over the transferred assets.  (ECF No. 30 at pp. 37–40.)  Defendant asserts the undisputed facts establish he had neither. *Id.*  The Government insists that, as a corporate officer, Defendant is "plainly" included in § 3713(b) and, even if the control test applied, Defendant exercised sufficient control.  (ECF No. 32 at pp. 26–27.)  "The term 'representative' [in § 3713(b)] has been construed to encompass corporate officers."  *Renda*, 709 F.3d at 480 n.7; *see, e.g.*, *Neuberger* II, 2024 WL 3964886, at *8 n.7 (noting the term "representative" in Section 3173(b) includes corporate officers, among others); *United States v. Lutz*, 295 F.2d 736, 742 (5th Cir. 1961) (explaining that the representative liability provision "imposes the danger of personal liability on [ ] corporate officers"); *United States v. Coyne*, 540 F. Supp. 175, 179 (D.D.C. 1981) (noting the Statute "encompasses any corporate officer who acts to prefer any creditor of an insolvent corporation over the claims of the United States"); *United States v. Golden Acres, Inc.*, 684 F. Supp. 96, 102 (D.Del. 1988) (finding sole officers and directors of insolvent corporation were representatives for purposes of the Statute).  Defendant fails to identify authority supportive of his argument that a corporate officer may be exempt from the Statute because he does not exert sufficient control.  *See* ECF No. 30 at p. 37 (citing cases).[2]

The parties agree that, to be held liable under the Statute, Defendant must have knowledge of the Government's claim.  (ECF Nos. 25-1 at p. 34; 30 at p. 40.)  Defendant insists the undisputed

---

[2] Of the cases cited on p. 37 of Defendant's Cross-Motion, only *United States v. Coyne* and *United States v. Renda* concern corporate officers.  In both cases, the court held the officers liable under the Statute.  *Coyne*, 540 F. Supp. at 179–80; *Renda*, 709 F.3d at 484–85.

record favors him in this regard and that the Government is unable to prove his actual knowledge of the claim.  (ECF No. 30 at pp. 39–40.)  It is undisputed, however, that Defendant received the Letter 950 from the IRS in March 2019.  (ECF No. 25-26; ECF No. 25-4, Tendler Deposition Tr. 204:17–205:17.)  Defendant forwarded the letter to Lehcim's outside counsel and described it as "love letters from our friends [the IRS]."  (ECF No. 25-26.)  The letter, the culmination of Lehcim's five-year audit in which Defendant was interviewed under oath multiple times, ordered full payment, contained payoff calculations, and informed Lehcim of its right to challenge the liabilities.  (ECF No. 25-24.)

Defendant's participation in the audit and receipt of the Letter prevent summary judgment in his favor, because a reasonable factfinder could conclude that a reasonably prudent person would have inquired as to the existence of the debt before making the challenged payments. *Coppola*, 85 F.3d at 1021; *see, e.g.*, *In re Gottheiner*, 703 F.2d 1136, 1140–41 (9th Cir. 1983) (finding individual had notice of debt when accountant advised him of amount of money that government intermediary had advanced insolvent corporation); *United States v. Stiles*, No. CIV.A. 13-138, 2014 WL 6775263, at *8 (W.D. Pa. Dec. 2, 2014) (finding Defendant knew about tax liability, at the latest, when his lawyer informed him that estate's tax returns were late); *Want v. C.I.R.*, 280 F.2d 777, 783 (2nd Cir. 1960) (noting that petitioner was liable from at least date of service of notice of deficiency and may be liable before then "if at the time she had actual notice of the government's intention to hold the trust liable" for additional tax liabilities).

Defendant identifies no persuasive authority that, as a matter of law, the undisputed record is incompetent on which to rest a finding of actual or constructive notice.  Defendant has not persuaded the court that there is no genuine dispute of material fact that could result in his liability under § 3713(b).

### 4. *Timeliness*

Defendant argues that any § 3713 claim against him is time-barred because the underlying tax assessment was untimely.  (ECF No. 30 at p. 46.)  "Generally, the IRS is required to assess tax liability within three years of the date on which the return to which the tax is related was filed ..., [h]owever, the Service and a taxpayer may extend the ... limitations period by entering a written agreement prior to expiration of the period." *Ripley v. Comm'r*, 103 F.3d 332, 335 (4th Cir. 1996) (citing 26 U.S.C. § 6501(c)(4)).  Section 6501(c)(4) provides that the time for tax assessment "may be extended" if "both the Secretary and the taxpayer have consented in writing." 26 U.S.C. § 6501(c)(4)(1).  Here, it is undisputed that Lehcim executed Forms 872 to extend the time.  (ECF Nos. 30 at p. 47; 25-52, 25-55–59.)  Defendant argues that the Forms 872 cannot be admitted as evidence, and accordingly cannot be used at summary judgment, because "the IRS has indicated no individual [who] has personal knowledge of them."  (ECF No. 30 at p. 47.)

The Government contends that the Forms are legally operative documents with independent legal significance and are thus admissible non-hearsay.  ECF No. 32 at p. 13 (citing *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 566 (D. Md. 2007)).  In *Lorraine*, this court found unauthenticated e-mails "introduced for the purpose of proving the making of the agreement to arbitrate the dispute … and the terms of this agreement" were not hearsay.  241 F.R.D. at 566. Defendant attempts to distinguish the Forms on the grounds that "the government is offering these exhibits for the purpose of proving that they were signed on the date apparently claimed in the forms."  (ECF No. 36 at p. 17.)  The Forms, however, are offered to show that Lehcim and the IRS consented in writing to the extension date outlined in the form.  *See* ECF No. 32 at p. 12–13; 26 U.S.C. § 6501(c)(4)(1).  In other words, the Forms are offered to show the making of an agreement to extend time to a specific date.  *See Lorraine*, 241 F.R.D. at 566.  Defendant does not explain or

provide authority to support why proving the date that the IRS signed the form is a material fact at issue.

Even if the Forms are not admissible as non-hearsay, Defendant has not shown that the Forms cannot be admissible.  To be entitled to consideration on summary judgment, evidence offered to establish a purported undisputed (or disputed) fact must be of a sort that could be admissible in evidence.  FED. R. CIV. P. 56(c).  Under Rule 56(c)(2) "as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could* be put in admissible form."  *Wake v. Nat'l R.R. Passenger, Corp.*, No. CIV. PWG-12-1510, 2013 WL 5423978, at *1 (D. Md. Sept. 26, 2013).

Here, Defendant's assertion that the Forms 872 could not be put into admissible form because of the Government's interrogatory answer identifying Mr. Neuberger, Mr. Tendler, and Lehcim's outside counsel at Zukerman Spaeder as persons "with personal knowledge of facts *that you believe are relevant to this case*" is unavailing.  *See* ECF No. 32 at pp. 13–14.  The Government attached to its Motion for Summary Judgment the fully executed Forms 872 bearing the signature of IRS officials.  (ECF Nos. 25-31, 25-52, 25-53, 25-54, 25-55, 25-56, 25-57, 25-58.) Additionally, in an associated case, the Government deposed the IRS agent who conducted Lehcim's audit and signed at least one of the Forms.  (ECF No. 32 at p. 13 n.4.)  The court is thus persuaded that the Government could identify a witness with personal knowledge to authenticate the Forms.

### 5.  *The Federal Tax Lien Act of 1966*

Defendant asserts that Section 3713 does not apply "due to the application of the Federal Tax Lien Act of 1966," 26 U.S.C. § 6321, *et seq*.  (ECF No. 30 at p. 44.)  This court addressed Defendant and Mr. Neuberger's argument, relying primarily on *United States v. Estate of Romani*,

532 U.S. 517 (1998), that "priorities in tax collection matters are dictated by the Federal Tax Lien Act – not the [Federal Priority] Statute" twice before. *Id*. at p. 45. In *Neuberger* I, Judge Gesner explained,

> Defendant's characterization of the Court's holding in *Estate of Romani* is far too broad. In *Estate of Romani*, the Court was asked to determine whether the United States should be granted priority—with regard to real property—for the deceased's unpaid tax liability pursuant to the Priority Statute, when the IRS had "failed to establish the tax lien prior to a judgment creditor's perfected and secured lien with regard to real property." 532 U.S. at 532. The Court rejected the United States' argument that the Priority Statute applied and held that the Priority Statute did not authorize the "the equivalent of a secret lien as a substitute for the expressly authorized tax lien." *Id*. at 534. The Court's analysis in *United States v. Russell*, No. 00-75597, 2002 WL 31174181, at *2 (E.D. Mich. Aug. 22, 2002) offers clarification of the application of the Priority Statute following the Court's holding in Estate of Romani. The Court in *Russell* noted that the *Estate of Romani* opinion does not preclude application of the Priority Statute in all tax cases, but rather requires the Government "to follow the correct procedures for securing/maintaining its statutorily-authorized tax lien ... in order to gain a priority over other secured creditors." *Id*. (emphasis added). Subsection (a) of the Tax Lien Act provides that a tax lien (i.e., a lien imposed by operation of § 6321) "shall not be valid as against [(1)] any purchaser, [(2)] holder of a security interest, [(3)] mechanic's lienor, or [(4)] judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323. As such, "a tax lien will be granted a priority against those four types of creditors only if the tax lien is properly (and timely) filed (and refiled)." *Russell*, 2002 WL 31174181, at *3.
>
> Here, plaintiff does not allege that a tax lien existed at the time of defendant's alleged transfers. Thus, to the extent any of defendant's creditors fall into one of the four categories enumerated above, the Tax Lien Act applies, and plaintiff fails to state a claim that the Government is entitled to be paid first pursuant to the Tax Lien Act. *Id*. at *3 (United States was not entitled to be paid before [non-Government creditor's] secured/perfected lien against the property where "tax lien had self-released (i.e., lapsed)."). With regard to any other class of creditors, however, the Priority Statute applies. *Id*. ("[Section 3713(a)(1)(B) applies to creditors other than the four classes of creditors specifically addressed in § 6323(a).").

*Neuberger I*, 2023 WL 4456795, at *2.  *See Neuberger* II, 2024 WL 3964886, at *11 (declining to revisit Judge Gesner's rejection of Mr. Neuberger's argument regarding the Tax Lien Act).

Defendant asserts that the Tax Lien Act applies here because Nightingale was a purchaser under § 6323(a).  Section 6323 defines purchaser as

> a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. In applying the preceding sentence for purposes of subsection (a) of this section, and for purposes of section 6324--
> (A) a lease of property,
> (B) a written executory contract to purchase or lease property,
> (C) an option to purchase or lease property or any interest therein, or
> (D) an option to renew or extend a lease of property,
> which is not a lien or security interest shall be treated as an interest in property.

26 U.S.C. § 6323(h)(6).  Defendant contends Nightingale "received adequate and full consideration in respect of the loan that it had previously made" and, as such, is a purchaser under § 6323(a).  (ECF No. 30 at pp. 45–46.)

In support of its argument, Defendant cites *Marteney v. U.S.*, 245 F.2d 135 (10th Cir. 1957).  In *Marteney*, Plaintiff and his law firm exchanged interest in a judgment that Plaintiff might obtain in a separate proceeding for cancellation of a pre-existing balance owed to the law firm.  The Tenth Circuit found the exchange constituted a sale in which the law firm was the purchaser.  *Id*. at 138. "To be a purchaser, there must be a sale … the cancellation of liability on the note was equivalent to the payment of money, and the attorneys became purchasers of an interest in a future judgment[.]"  *Id*. at 138–39.  Here, Defendant nowhere attempts to resolve how Nightingale "acquire[d] an interest in property which is valid under local law against subsequent purchasers without actual notice."  26 U.S.C. § 6323(h)(6).  Defendant seems to compare Lehcim's transfer

of money to Nightingale to the sale *Marteney*.  *See* ECF No. 30 at p. 46 (citing *Marteney* for the proposition "transfer of property in exchange for relief of obligation under note considered purchase.").  Lehcim's transfer of money to Nightingale is materially different from the transfer in *Marteney*; and *Marteney* predates the Tax Lien Act of 1966, which defines "purchaser" as contained in Section 6323(a).

Since the 1966 passage of the Tax Lien Act, multiple courts have determined that assignment for past due consideration, including transfer as repayment for moneys previously loaned by the transferee, is "inadequate to raise the assignee to the status of purchaser within the statute." *United States v. Pavenick*, 197 F. Supp. 257, 259 (D.N.J. 1961); *see United States v. Phillips*, 715 F. Supp. 81, 84 (S.D.N.Y. 1989); *United States v. Sweeny*, 418 F. Supp. 2d 492, 497 (S.D.N.Y. 2006).  Defendant has not demonstrated that the Tax Lien Act, and not the Federal Priority Statute, applies.  Defendant is not entitled to judgment as a matter of law on this, or any other grounds raised; accordingly, his Cross-Motion shall be denied.

### C.  Motions to Seal

Defendant's first Motion to Seal (ECF No. 31) seeks to seal Defendant's Cross-Motion and Opposition to the Government's Motion for Summary Judgment, as well as all accompanying exhibits to ECF No. 30.  Defendant asks this court to seal ECF No. 30 "[p]ursuant to Paragraph 2 of the Court's Order Regarding Confidentiality of Discovery Material."  (ECF No. 31.)  Paragraph 2 of the Confidentiality Order is clear that materials marked "confidential" pursuant to the order shall be filed with an interim sealing motion "governed by L.R. 105.11."  (ECF No. 21 ¶ 2.) Defendant, however, did not address the relevant Local Rule.  Defendant's second Motion to Seal (ECF No. 37) seeks to seal his Reply in Support of his Cross-Motion for Summary Judgment (ECF

No. 36).   Defendant asserts sealing is appropriate "[p]ursuant to Paragraph 2 of the Court's Order Regarding Confidentiality of Discovery Material[.]"  (ECF No. 37.)

By order of October 17, 2024, the court instructed Defendant to supplement both motions to address Local Rule 105.11.  (ECF No. 38.)  Defendant timely filed a supplemental brief (ECF No. 39) and Plaintiffs responded in opposition (ECF No. 41).

In his supplemental memorandum, Defendant argues his Cross-Motion and Reply in support thereof, as well as the Government's Motion for Summary Judgment and Reply in support thereof, warrant sealing to maintain the confidentiality of Lehcim's records, including tax records and information.  (ECF No. 39 at pp. 1, 2.)  Specifically, Defendant insists Maryland Rules and the United States Code mandate confidentiality of Lehcim's tax records.  *Id.* (citing MD. RULE 19-301.6 and 26 U.S.C. § 6103(a)).  Although Defendant does not object to unsealing the filings in question with redaction of references to confidential information, he does not specify what information should be redacted.  (ECF No. 39 at pp. 3, 4.)

"The First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014); *see also Springs v. Ally Fin. Inc.*, 684 F. App'x 336, 338 (4th Cir. 2017).  This is because "summary judgment adjudicates substantive rights and serves as a substitute for a trial." *Rushford v. New Yorker, Inc.*, 846 F.2d 249, 252 (4th Cir. 1998).  Accordingly, "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).  "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal citation omitted).  Importantly, "the First

Amendment right of access to summary judgment materials does not depend on . . . judicial reliance on the documents in resolving the motion," but rather "once the documents are 'filed in connection with a summary judgment motion in a civil case,' the 'more rigorous First Amendment standard' must be satisfied before the public can be denied access." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 172 (4th Cir. 2024) (quoting *Rushford*, 846 F.2d at 252–253) (emphasis in original).

As set forth in Section II, *supra*, when the First Amendment right of access applies, the court may order sealing only if "(1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest.'" *Gonzalez v. Cuccinelli*, 985 F.3d 357, 376–77 (4th Cir. 2021) (quoting *In re Washington Post Co.*, 807 F.2d 383, 390, 392 (4th Cir. 1986)). Defendant invokes two statutory bases for sealing—Maryland Rule 19-301.6 and 26 U.S.C. Section 6103(a)—but fails to provide particularized reasons why sealing is necessary.

Maryland Rule 19-301.6 provides that an Attorney shall not reveal information related to the representation of a client. MD. R. ATTORNEYS 19-301.6. Sub-sections 301.6(b)(5) and (6), however, allow exceptions for an attorney to "establish a defense to a … civil claim … against the attorney based upon conduct in which the client was involved or to respond to allegations in any proceeding concerning the attorney's representation of the client" or "to comply with these Rules, a court order or other law." *Id*. 301.6(b)(5), (6). Rule 301.6 gives way to discovery requests because, "[t]he confidentiality umbrella of the ethical rule encompasses all situations *except* where the evidence is sought from the lawyer through compulsion of law. In the latter situation, only the attorney-client privilege, not the broader rule of confidentiality, protects against disclosure."

28

*Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 705 (2000); *Att'y Grievance Comm'n of Maryland v. Frank*, 470 Md. 699, 734 (2020) (same); *Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. v. United States*, No. CV EA-22-2129, 2024 WL 3370603, at *3 (D. Md. Mar. 15, 2024) (same).  Here, the First Amendment right of access compels the information, and Defendant has not met his burden, beyond broadly asserting statutory protection as compelling reasons why the documents must remain under seal.

Section 6103(a) provides that "[r]eturns and return information shall be confidential, . . . except as authorized by this title." 26 U.S.C. § 6103(a).  Per section 6103(h)(4)(A), however, "Congress has created an explicit exception for the disclosure of tax information in association with judicial and administrative tax proceedings."  *Bowers v. J&M Disc. Towing, L.L.C.*, No. 06-299 JB/RHS, 2007 WL 967161, at *5 (D.N.M. Feb. 28, 2007).  Subsection (h)(4) further provides in pertinent part: a "return or return information may be disclosed in a Federal . . . judicial . . . proceeding pertaining to tax administration, but only . . . if . . . the proceeding arose out of, or in connection with, determining the taxpayer's civil . . . liability, or the collection of such civil liability, in respect of any tax imposed under this title." 26 U.S.C. § 6103(h)(4)(A); *see also Whistleblower 972-17W v. Commissioner of Internal Revenue*, No. 972-17W, 2022 WL 2718766, at *6-11 (T.C. July 13, 2022) (discussing Section 6103(h)(4)).

Importantly, the Fourth Circuit cautions that "§ 6103(h)(4) exceptions operate only as a gatekeeper device that allows the disclosure of taxpayer information in certain situations." *Nagy v. United States*, 519 F. App'x 137, 143 (4th Cir. 2013).  Thus, if "a § 6103(h)(4) exception applies, that determination removes only the statutory disclosure barrier." *Id*.  The court must then engage in the ordinary analysis to determine if sealing is warranted. *Silver v. Internal Revenue Serv.*, No.

19-CV-247 (APM), 2021 WL 1177998, at *2 (D.D.C. Mar. 28, 2021) (noting that Section 6103 permits but does not require disclosure).

Here, the section 6103(h)(4) exception applies. The Government initiated the instant action to collect Lehcim's outstanding tax liability from Defendant. (ECF No. 1.) Therefore, this matter arises from determination of Lehcim's tax liability and efforts to collect same. *See, e.g., Gardner v. United States*, 213 F.3d 735, 738 (D.C. Cir. 2000) (noting that federal law defines "tax administration" broadly); *United States v. Mangan*, 575 F.2d 32, 40 (2d Cir. 1978) (observing that "the definition of 'tax administration' in § 6103(b)(4) is so sweeping as to compel rejection of a restrictive interpretation"). In the associated case, Mr. Neuberger conceded that the tax returns in this case (and unsealed in the associated case) fall within this exception. *Neuberger* II, 2024 WL 3964886, at *5. Defendant's argument that sealing is warranted because the documents do not bear on a material issue in this case is unavailing. *Oberg*, 105 F.4th at 172 (explaining the "right of access to summary judgment materials does not depend on . . . judicial reliance on the documents in resolving the motion," but rather "once the documents are 'filed in connection with a summary judgment motion in a civil case,' the 'more rigorous First Amendment standard' must be satisfied before the public can be denied access.").

The court struggles to see how a heretofore protected compelling interest is vulnerable to harm or risk when the same documents have been unsealed in the associated case in near entirety. *Neuberger* II, 2024 WL 3964886, at *6 (describing "[g]iven the volume and nature of the exhibits… [Judge Aslan] held a conference with counsel to determine whether any personally identifiable information or other discrete portions of the filings should be redacted" following the conference, the Government filed amended exhibits removing "extraneous or duplicative documents" the corresponding original exhibits remained sealed, all other exhibits were unsealed).

30

Defendant does not request that the court hold a similar conference here. Instead, he asks to confer with the Government about his vague redaction requests. (ECF No. 39 at pp. 3, 4, 6.)

Defendant does not persuade the court that sealing the Motions and exhibits would serve a compelling interest or that there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed. Finally, as far as this court can deduce, Defendant's proposed redactions seek to protect Lehcim's information under the very statutory protections this court, as explained above, finds unpersuasive. *See id*. at p. 4 ("Mr. Tendler does not object to unsealing portions of this filing provided that portions of the Statement of Undisputed Facts (pp. 6 –9), portions of the argument (p. 26 – 28, 37 – 41) and exhibits (e.g., Ex. 6 – 8, 11 – 12) be redacted to protection confidential client and tax information for the reasons set forth *supra*."). Accordingly, the Motions to Seal will be denied.

## IV.   **CONCLUSION**

For the reasons set forth herein, by separate order, the Government's Motion for Summary Judgment (ECF No. 25) and Defendant's Cross-Motion for Summary Judgment (ECF No. 30) will be denied. Defendant's Motions to Seal at ECF Nos. 31 and 37 will also be denied.

**/S/**

March 26, 2025                                   _____

Julie R. Rubin
United States District Judge